UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Andres David VILLACIS JARAMILLO,

Petitioner,

v.

Warden of Krome North Service Processing Center; Garrett RIPA, Field Office Director of Enforcement and Removal Operations, Miami Field Office, U.S. Immigration and Customs Enforcement; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Todd BLANCHE, U.S. Attorney General.

Respondents.

Case No. 1:26-cv-25037-RKA

**MOTION FOR TEMPORARY RESTRAINING ORDER**

Petitioner, Andres David Villacis Jaramillo ("Petitioner"), by and through undersigned counsel, respectfully moves this Court pursuant to Fed. R. Civ. P. 65, for a temporary restraining order enjoining Respondents from transferring Petitioner outside the Southern District of Florida or removing him from the United States while this matter remains pending, and, upon consideration of the merits of his habeas claim, order Petitioner's immediate release from physical custody and restoration to the Order of Supervision. In support, Petitioner states the following:

1. from transferring Petitioner outside the Southern District of Florida or removing him from the United States while this matter remains pending, and,

## I. STATEMENT OF FACTS

2. Petitioner is a 32-year-old Venezuelan national who was lawfully admitted under L-2 status into the United States on February 11, 2007, when he was 14 years old. On July 17, 2026, Petitioner was unlawfully detained by ICE after voluntarily appearing for his annual routine check-in appointment pursuant to an Order of Supervision (OSUP) issued by Immigration and Customs Enforcement ("ICE") under 8 C.F.R. §§ 241.4 (3), 241.13(f)-(h) on or around August 23, 2011, fifteen (15) years ago. Petitioner was held at Krome North Service Processing Center in Miami, Florida for about ten (10) days. He was subsequently transferred among multiple detention facilities in California, Texas, Florida, Colorado, and Arizona, facing imminent removal. Today, September 12th, 2026, Petitioner is being held at Broward Transitional Center ("BTC").

## II. LEGAL STANDARD

3. A temporary restraining order is governed by both Fed. R. Civ. P. 65, and S.D. Fla. L.R. 7.1(d). The Court has authority to issue a temporary retraining order ("TRO") under Federal Rule of Civil Procedure 65. *Huete-Alvarez v. Bondi*, No. 26-cv-20991-BLOOM, slip op. at 4 (S.D. Fla. Feb. 25, 2026) (citing *Florida v. Mayorkas*, 672 F. Supp. 3d 1206, 1212 (N.D. Fla. 2023)).

4. To obtain a TRO, a movant must establish: "(A) a substantial likelihood of success on the merits; (B) irreparable injury in the absence of relief; (C) that the threatened injury outweighs the harm the requested relief would cause the nonmovant; and (D) that the requested relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1223,

1226 (2005). The substantial-likelihood-of-success requirement must be satisfied even when the remaining factors favor emergency relief. *Id.*

5. A preliminary injunction is an extraordinary remedy, and the movant must clearly establish each element. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc), and reiterated in *Pine v. City of West Palm Beach,* 762 F.3d 1262 (11th Cir. 2014). *See also Wreal, LLC v. Amazon.com, Inc.,* 840 F.3d 1244, 1247 (11th Cir. 2016).

6. In *Huete-Alvarez*, the Southern District applied the Rule 65 framework to an emergency TRO sought by an immigration detainee challenging ICE's revocation of a longstanding Order of Supervision and subsequent re-detention. The court recognized federal habeas jurisdiction over a challenge to the legality of immigration detention and proceeded to evaluate the petitioner's request for emergency injunctive relief under the traditional Rule 65 factors. *Huete-Alvarez*, No. 26-cv-20991-BLOOM, slip op. at 3–6 (S.D. Fla. Feb. 25, 2026).

## III. ARGUMENT

### A. Petitioner is Substantially Likely to Succeed on the Habeas Claim.

#### 1. Respondents Lack Statutory Authority to Detain Petitioner

7. Noncitizens present in the United States are entitled to due process under the Fifth Amendment. *Reno v. Flores,* 507 U.S. 292, 306 (1993). That includes protection against deprivations of liberty—like immigration detention—without due process of law. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.").

8. Petitioner was granted Withholding of Removal and released under an Order of Supervision pursuant to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. 8 USCS § 1231, 8 CFR

241.5. The removal period expired, and ICE determined that his removal was not significantly likely in the reasonably foreseeable future, warranting supervised release. 8 CFR 241.13 (2026).

9. An alien released under an Order of Supervision must comply with specified conditions, including periodic reporting, continued efforts to obtain travel documents, and advance approval for travel. 8 CFR 241.5 (2026). The order may also require the posting of a bond and include employment authorization if the alien cannot be removed in a timely manner or removal is impracticable or contrary to the public interest. 8 CFR 241.5 (2026).

10. The regulations governing post-removal-period detention and supervision contemplate continued custody only during the ninety-day removal period, with detention beyond that period authorized only under narrow circumstances: the alien fails or refuses to make timely application for travel documents, conspires to prevent removal, or falls within specified criminal or national-security categories. 8 USCS § 1231 (2025), 8 CFR 241.4 (2026). Petitioner does not fall within any of these categories. Petitioner has complied with all supervision conditions, and has appeared for all scheduled check-ins. Indeed, Petitioner was detained while complying with his Order of Supervision, rather than as a result of any alleged failure to comply with its conditions, and has no criminal convictions or national-security concerns. Detention authority under section § 1226a applies only to certified terrorist aliens, a category inapplicable here. 8 USCS § 1226a.

11. Respondents have provided no informal interview, no finding of supervision violations, and no legal basis for Petitioner's detention. Detention without statutory authority violates the Immigration and Nationality Act.

**2. Detention Violates Petitioner's Due Process Rights**

12. Petitioner's detention also violates his rights under the Fifth Amendment. Prolonged civil immigration detention without an individualized determination of necessity and dangerousness violates due process.

13. Respondents detained Petitioner without notice and without articulating any reason. The regulations require that conditions of supervision be specified in the order and that the alien be advised of the consequences of violation. 8 CFR 241.5 (2026), 8 CFR 241.13 (2026). Revocation or modification of supervision without notice and a meaningful opportunity to respond denies Petitioner procedural protections to which he is entitled.

14. Petitioner's fifteen years of compliance overwhelmingly undermine any generalized assertion that detention is necessary.

15. The Government possesses approximately fifteen years of evidence concerning Petitioner's behavior while released. During that time, Petitioner remained available to ICE. Indeed, the circumstances of his arrest dramatically demonstrate his reliability: Petitioner was arrested because he voluntarily presented himself to ICE in compliance with the Government's reporting requirement. There is therefore no reasonable basis to characterize Petitioner as an absconding risk based merely upon speculation. Nor can detention be justified by generalized concerns divorced from Petitioner's individual circumstances. Civil immigration detention serves regulatory purposes; it cannot constitutionally become punishment. *See Zadvydas*, 533 U.S. at 690.

**B. Petitioner Is Suffering Irreparable Harm Absent Immediate Relief**

16. Petitioner is suffering irreparable harm from unlawful detention and wrongful deportation.

17. Since his detention on July 17, 2026, fifty-seven days ago, Petitioner has been transferred approximately ten times between seven detention centers within five states, including

Florida, Texas, Colorado, Arizona, and California. *See Exhibit A – Transfer Notifications from ERO account.*

18. The unlawful detention and repeated transfers have been extremely difficult for Petitioner. Every time he is transferred, he experiences severe anxiety, stress, and depression. He is never informed when he will be transferred, to where and for how long. He is abruptly woken up at night to be moved to another detention facility and remains handcuffed and shackled for indefinite time until he arrives at the final destination, most of the time, long hours and days. *See Exhibit B – Declaration from Petitioner.*

19. The uncertainty surrounding each transfer has imposed an intolerable physical and psychological burden on Petitioner. These transfers often last for many hours, and sometimes days, during which Petitioner remains restrained in handcuffs and shackles that cause severe pain and discomfort in his hands and arms. He is then confined in extremely cold holding rooms, depriving him of sleep and exacerbating his anxiety, lack of appetite and flu-like symptoms, for which he requires medical care. Upon arriving at each new detention facility, Petitioner promptly seeks treatment, yet repeated transfers without prior notice prevent him from completing any course of care. This relentless cycle has left Petitioner in persistent pain, without continuity of treatment, and in constant fear that he will be transferred again before receiving the medical attention he needs. *See Exhibit B – Declaration from Petitioner.*

20. Petitioner, in general, faces potentially prolonged confinement while this action is litigated and adjudicated. Federal habeas proceedings may remain pending for months and during that period, Petitioner will remain separated from his family and community and subjected to the inhumane conditions of constant transfers, as well as other restrictions inherent in civil detention, together with the continuing uncertainty surrounding his confinement and potential removal.

21. These circumstances cause significant physical, emotional and psychological distress, including anxiety, isolation, uncertainty, and the continuing hardship of separation from his family and established community. Each additional day of detention compounds these injuries and prolongs the alleged deprivation of Petitioner's constitutional right to liberty. A favorable judgment months from now cannot restore the time Petitioner has spent in custody or undo the personal and familial consequences of that confinement, including unreasonable transfers between detention facilities. Accordingly, the harm is immediate, continuing, and incapable of being fully remedied after the fact.

22. The Supreme Court addressed whether deportation is irreparable harm in *Nken v. Holder*. The Supreme Court granted certiorari in *Nken* to resolve a circuit split on what standard governs a request to stay a removal order pending review by a court of appeals. The *Nken* court held, "Although removal is a serious burden for many aliens, it is not categorically irreparable[.]" *Nken*, 556 U.S. at 435 (2009). The Court explained, "Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id*. But that is not the case here. There is no pending immigration proceeding that could make Petitioner whole if he continues to be transferred while detained and finally wrongfully deported.

**C. The Balance of Harms Favors a Limited Restraint on Transfer.**

23. The balance of hardships weighs overwhelmingly in Petitioner's favor. His injuries are immediate, concrete, and substantial. Each additional day of detention, compounded by repeated transfers among detention facilities, deprives Petitioner of his liberty and access to adequate and continuous medical care. His detention also separates him from his family and community, prevents him from working and fulfilling his financial and civic obligations, and

jeopardizes the personal and economic stability he has built during approximately fifteen (15) years of supervised release. Meanwhile, his physical and mental health continue to deteriorate. These harms deepen with each passing day and cannot be fully remedied after the fact. These injuries continue to accrue for as long as Petitioner remains detained and cannot be adequately remedied after the fact.

24. By contrast, Respondents would suffer little, if any, cognizable harm from Petitioner's being held in the same facility while this matter remains pending. Petitioner does not seek to eliminate DHS's authority to supervise him. Rather, he ultimately seeks restoration to the same Order of Supervision under which he successfully lived for the last fifteen (15) years pursuant to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

25. Upon release, Respondents would retain their authority to require periodic reporting, impose and enforce lawful conditions of supervision, require continued cooperation with efforts to obtain travel documents, and otherwise exercise the supervisory authority authorized by statute and regulation.

26. Petitioner's history further demonstrates the absence of meaningful prejudice to Respondents. During fifteen (15) years, Petitioner complied with the conditions imposed upon him, appeared for his required immigration check-ins, and remained available to DHS. Indeed, his present detention occurred when he voluntarily appeared for a scheduled ICE check-in in compliance with his Order of Supervision—not because he absconded, violated a condition of release, or failed to report.

27. Respondents have identified no intervening criminal conviction, violation of supervision, flight risk, danger to the community, or other changed circumstances demonstrating that Petitioner's continued physical detention is necessary to protect a legitimate governmental interest.

28. This request to refrain from moving Petitioner to another detention facility and ultimately release, therefore would not prevent Respondents from carrying out the immigration laws or frustrate the execution of a removal order. Petitioner has been granted withholding of removal, and DHS previously determined that his removal was not significantly likely in the reasonably foreseeable future and released him subject to supervision. Returning Petitioner to that supervisory framework would preserve the Government's ability to monitor him while avoiding the severe and continuing deprivation of liberty caused by detention.

29. The contrast between the competing harms is therefore substantial. Denial of relief subjects Petitioner to continued physical confinement, separation from his family, loss of employment and financial stability, increased anxiety, stress, deterioration of physical condition and ongoing deprivation of liberty that cannot later be restored.

**D. The Requested Relief Serves The Public Interest**

30. The fourth factor likewise weighs strongly in Petitioner's favor because the requested relief would serve, rather than disserve, the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005). Where, as here, the Government is the party opposing injunctive relief, the balance-of-harms and public interest considerations substantially overlap. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

31. The public has a compelling interest in ensuring that DHS exercises its immigration authority consistently with the Constitution, federal statutes, and its own governing regulations. DHS cannot claim legitimate public interest in maintaining detention that Petitioner demonstrates is likely unlawful. Courts have repeatedly recognized that public interest is served when governmental agencies act within the limits imposed upon them by law. *See Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010).

32. The interest is particularly significant here because continued detention imposes not only a substantial deprivation of Petitioner's liberty, but also continuing burdens upon public resources. Petitioner's detention requires DHS to expend taxpayer-funded resources for housing, security, transportation, medical, and administrative services. Those costs are compounded, when, as has occurred here, Petitioner is repeatedly transported across state lines and transferred among detention facilities. Each additional interstate transfer necessarily entails further government expenditures associated with transportation, personnel, security, processing, and continued detention.

33. Expenses because of constant transfers between detention facilities are borne by the public. Where Petitioner has demonstrated a substantial likelihood that his continued detention is unlawful, there is no countervailing public interest in requiring taxpayers to continue financing detention – and repeated interstate transfers- that serve no lawful detention purpose. To the contrary, conserving DHS resources and avoiding unnecessary expenditures of funds provide additional equitable considerations supporting narrowly tailored temporary relief while this Court determines the legality of Petitioner's detention.

34. The requested TRO would also preserve the status quo and this Court's ability to provide meaningful habeas relief. Preventing further transfers and continued unlawful detention while the Court adjudicates Petitioner's claims avoids practical disruption created by repeatedly moving Petitioner between jurisdictions and detention facilities and ensures that DHS does not frustrate meaningful judicial review through continued custodial movement. Importantly, Petitioner does not ask this Court to disregard the Government's legitimate interest in enforcing the immigration laws. Rather, he seeks only to require the Government to exercise its authority within the boundaries established by Congress, the Constitution, and applicable regulations. The Government retains a legitimate interest in immigration enforcement, but that interest does not

extend to detention that exceeds lawful authority. Indeed, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors v. Department of Health & Human Services*, 594 U.S. 758, 766 (2021).

35. Accordingly, the public interest favors temporary injunctive relief. Such relief protects Petitioner's fundamental liberty interest, preserves meaningful judicial review, promotes compliance with federal law, and prevents the continued expenditure of taxpayer resources on detention and repeated interstate transfers that Petitioner has shown are likely unlawful. The fourth *Schiavo* factor therefore weighs decidedly in Petitioner's favor.

## IV. CONCLUSION

36. For the foregoing reasons, Petitioner respectfully submits that each of the four requirements for temporary injunctive relief under *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005), is satisfied. Petitioner has demonstrated a substantial likelihood of success on his claim that his re-detention, after approximately fifteen years of compliance with his Order of Supervision, lacks lawful justification; that he is suffering immediate and irreparable harm from his continued detention and repeated interstate transfers; that the substantial deprivation of his liberty and resulting physical, emotional, familial, and financial harms substantially outweigh any cognizable burden upon Respondents; and that temporary relief serves the public interest by preserving meaningful judicial review, ensuring that the Government acts within its lawful authority, and avoiding the unnecessary expenditure of taxpayer resources associated with continued detention and repeated interstate transfers. Accordingly, Petitioner respectfully requests that this Court GRANT the Motion for Temporary Restraining Order, immediately ENJOIN Respondents from transferring Petitioner outside the Southern District of Florida or removing him from the United States while this matter remains pending, and, upon consideration of the merits of his habeas claim, ORDER Petitioner's release

from physical custody and restoration to the Order of Supervision under which he successfully remained for approximately fifteen years, together with such other and further relief as this Court deems just and proper.

**DATED**: September 14, 2026

Respectfully submitted,

*/s/ Elizabeth Oropesa*
Elizabeth Oropesa (FL Bar #1028541)
Oropesa Legal PLLC.
400 University Drive, Suite 400
Coral Gables, Florida 33134
P: (305) 938-0520
E: elizabeth@oropesalegal.com
*Local Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on September 14, 2026, they caused the foregoing Motion to be filed using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

*/s/ Elizabeth Oropesa*
Elizabeth Oropesa (FL Bar #1028541)
Oropesa Legal PLLC.
400 University Drive, Suite 400
Coral Gables, Florida 33134
P: (305) 938-0520
E: elizabeth@oropesalegal.com
*Local Counsel for Petitioner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Andres David VILLACIS JARAMILLO,

Petitioner,

v.

Warden of Krome North Service Processing Center; Garrett RIPA, Field Office Director of Enforcement and Removal Operations, Miami Field Office, U.S. Immigration and Customs Enforcement; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; Todd BLANCHE, U.S. Attorney General.

Respondents.

Case No. 1:26-cv-25037-RKA

**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**

THIS CAUSE having come before the Court on the Motion For Temporary Restraining Order. This Court having considered the motion and all other relevant factors, it is hereby ORDERED AND ADJUDGED that Petitioner's Motion for Preliminary Injunction and/or Temporary Restraining Order (Doc. 11) is GRANTED, and the court ORDERS the following:

_____ Petitioner shall be released immediately from the Respondents' custody and his prior Order of Supervision shall be restored with all previous conditions intact.

_____ The respondents are enjoined from detaining Petitioner absent a lawful basis and individualized determination with notice and an opportunity to be heard.

_____ The respondents are enjoined from removing Petitioner outside the Southern District of Florida while the Court considers his habeas claims.

_____ The respondents are enjoined from removing Petitioner from the United States while the Court considers his habeas claims.

DONE AND ORDERED in Chambers at _________________________, Florida, this day of ________________.

_________________________________
United States District Judge

Copies furnished to: All Counsel of Record